UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60082-CIV-SCOLA/ROSENBAUM

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

BANKATLANTIC BANCORP, INC., and
ALAN B. LEVAN,

        Defendants.
_____/

**ORDER**

This matter comes before the Court upon Defendants BankAtlantic Bancorp, Inc. ("Bancorp"), and Alan B. Levan's Motion to Compel Production of Documents Regarding the SEC's Investigation and Enforcement Actions Against Financial Institutions that Received Federal Assistance [D.E. 29] and Defendants Bancorp and Levan's Motion to Compel Production of Documents Regarding Financial Institutions' Disclosures [D.E. 31], upon referral by the Honorable Robert N. Scola, Jr. *See* D.E. 4. The Court has reviewed Defendants' Motions and all supporting and opposing filings and has held a hearing on the Motions on June 26, 2012. After careful consideration, the Court now denies Defendants' Motion to Compel Production of Documents Regarding the SEC's Investigation and Enforcement Actions and denies Defendants' Motion to Compel Production of Documents Regarding Financial Institutions' Disclosures for the reasons set forth below.

### *I. Background*

In his May 29, 2012, Order granting in part and denying in part Defendants' Motion to Dismiss [D.E. 27], Judge Scola has previously set forth the facts from which this lawsuit arises. He has also discussed in some detail the allegations contained in the SEC's Complaint. *See SEC v. BankAtlantic Bancorp, Inc.*, 2012 WL 1936112 (S.D. Fla. May 29, 2012). In the interests of efficiency, the Court does not repeat that entire summary here.

Rather, the Court briefly reviews the now-Amended Complaint[1] in this matter to provide context for the determination of the pending motions. According to the Amended Complaint, Defendant Bancorp is the holding company for BankAtlantic, described as "one of Florida's largest banks." *See* D.E. 34 at ¶ 2. Defendant Levan serves as the chief executive officer and chairman of Bancorp. *Id.* at ¶ 1.

At its heart, the Amended Complaint asserts that Bancorp and Levan, knowing that its real-estate loan portfolio was already experiencing significant losses and was anticipating additional substantial losses in both the Builder Land Bank loans ("BLB loans") and the rest of the land-loan portfolio ("non-BLB loans"),[2] "knowingly, willfully, or recklessly" made material false statements and omitted to disclose material facts regarding the trend toward deteriorating condition of the land-loan portfolio. *See, e.g.,* D.E. 34 at Count I.

---

[1] Judge Scola granted in part Defendants' Motion to Dismiss the Complaint [D.E. 13], as it related to Counts VI and VII of the original Complaint, dismissing these claims without prejudice and permitting the SEC to file an amended complaint within fourteen days of the Order. *See* D.E. 27. The SEC subsequently timely filed its Amended Complaint. *See* D.E. 34. Defendants have not yet responded.

[2] BLB loans are issued to entities who obtained raw land for initial development into lots and sold them to a national builder. *See* D.E. 34 at ¶20. In this Order, the designation "non-BLB loans" pertains to those loans where the borrowers themselves developed and built upon the land.

The Amended Complaint further claims that following Bancorp's eventual announcement of its losses, Bancorp engaged an investment bank to make efforts to sell many of the problem loans in the commercial real-estate portfolio. D.E. 34 at ¶ 92. Once Bancorp realized that if it were attempting to sell the problem loans, that fact would have a significant negative impact on the accounting treatment of the loans — and, thus, on Bancorp's financial disclosures, the Amended Complaint continues, Bancorp modified its contract with the investment bank to reflect that the investment bank was advising Bancorp on "opportunities to test market certain loans," from the original language, which read that the investment bank was advising Bancorp on "opportunities to sell certain loans," even though, according to the SEC, the investment bank was still trying to sell the loans. *See id.* at ¶¶ 95-102.

When Bancorp was unable to sell the problem loans at an acceptable price, the Amended Complaint alleges, it simply transferred some of them, along with other problem loans, to an inactive Bancorp subsidiary with no assets. D.E. 34 at ¶¶ 113 - 16. Then, the SEC asserts, Bancorp gave the subsidiary $100 million, which the subsidiary sent back to Bancorp, apparently as "payment" for the problem loans. *Id.* The SEC avers that these transactions had the effect of strengthening BankAtlantic's capital position by removing the loans from its books while simultaneously infusing the bank with cash. *Id.* The Amended Complaint concludes that, as a result of these alleged machinations, Bancorp's publicly disclosed financial statements were false and substantially understated Bancorp's losses. *Id.* at ¶¶ 123-25.

Based on this background, the Amended Complaint contains nine counts. These counts allege a variety of securities-law violations, including that Bancorp and Levan made "knowingly, willfully, or recklessly" made material misrepresentations and omitted to state material facts in

connection with the purchase or sale of Bancorp securities; that Levan falsified books and records of Bancorp and circumvented internal accounting controls; that Bancorp did not file timely and accurate reports with the SEC; that Levan assisted Bancorp in this failure; that Bancorp did not keep records that accurately and fairly reflected transactions; that Levan aided Bancorp in this shortcoming; that Bancorp did not devise and maintain a system of internal accounting controls to reasonably assure conformity with generally accepted accounting principles ("GAAP"); and that Levan assisted Bancorp in this failure.

During the course of litigation, Defendants served the SEC with, among other discovery requests, its First and Second Requests for Production of Documents. *See* D.E. 30-2 & D.E. 32-2. Displeased with the SEC's objections to certain of these requests, Defendants filed their Motion to Compel Production of Documents Regarding the SEC's Investigation and Enforcement Actions Against Financial Institutions that Received Federal Assistance [D.E. 29] ("Defendants' Second Motion") and their Motion to Compel Production of Documents Regarding Financial Institutions' Disclosures [D.E. 31] (Defendants' First Motion").[3] In both Motions to Compel, Defendants challenge the SEC's characterization of the documents that Defendants seek as "irrelevant."

More specifically, Requests 27 through 29, which are at issue in Defendants' First Motion, seek the following:

---

[3]The earlier-filed motion [D.E. 29] seeks to compel responses to Defendants' Second Request for Production of Documents, while the later-filed motion [D.E. 31] asks the Court to require Defendants to respond to certain requests contained within Defendants' First Request for Production of Documents. In the interest of avoiding confusion, despite the timing of the filing of the motions, this Order refers to the Motion to Compel that addresses the First Request for Production as Defendants' First Motion and the Motion to Compel that pertains to the Second Request for Production as Defendants' Second Motion.

> **Request No. 27**
> All documents created during the years 2007 through 2009 regarding the appropriate manner in which companies owning and controlling federally insured financial institutions should, in public filings, disclose internal loan grades or changes in such grades, including communications with bank regulatory agencies.
>
> **Request No. 28**
> All documents evaluating the nature of and the adequacy of public disclosure by US public companies which owned or were federally insured financial institutions or investment banks of the risks that manifested in the near collapse of the world banking system in 2008.
>
> **Request No. 29**
> All civil complaints brought by [the SEC] against any public company or against an officer or director of a public company in which [the SEC] [has] alleged the failure to adequately warn of conditions that, when they occurred, caused the catastrophic losses to the banking system that ultimately led the US government to adopt the Treasury Asset [Rep]urchase Program ("TARP"), the takeover of AIG and other federal financial assistance to certain companies to stabilize the banking system.

*See* D.E. 31. The requests in controversy in Defendants' Second Motion all seek information relating to whether the SEC treats entities receiving funds from the federal government differently than institutions such as Bancorp, which accepted no such funds:

> **Request No. 1**
> All documents evaluating whether any company's status as a recipient of funds from the federal government, whether through the Troubled Asset Repurchase Program ("TARP") or any other source, would, should, or did affect any decision whether to investigate that company, its officers, or its directors.
>
> **Request No. 2**
> All documents evaluating whether any company's status as a recipient of funds from the federal government, whether though TARP or any other source, would, should, or did affect any decision to close an investigation of that company, its officers, or its directors.
>
> **Request No. 3**

> All documents evaluating whether any company's status as a recipient of funds from the federal government, whether through TARP or any other source, would, should, or did affect any decision to bring an enforcement action against that company, its officers, or its directors.
>
> **Request No. 4**
> All documents evaluating whether any company's status as a recipient of funds from the federal government, whether through TARP or any other source, would, should, or did affect any remedies or damages that you considered seeking, could have sought, or sought against that public company, its officers, or its directors.

*See* D.E. 29.

In response to these requests for production, the SEC objected, challenging all of them as "irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." *See* D.E. 29 & D.E. 31. In addition, the SEC expressed other objections, but Defendants limit their Motions to Compel to seek a ruling from the Court that the documents requested are relevant and to obtain an order from the Court requiring the SEC to prepare a privilege log of all responsive documents. *See* D.E. 29 & D.E. 31.

On June 26, 2012, the Court held a hearing on Defendants' Motions to Compel. Defendants' Motions are now ripe for disposition.

### *II. Analysis*

Rule 26(b), Fed. R. Civ. P., governs the scope of discovery. That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." R. 26(b)(1), Fed. R. Civ. P. The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which

may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[4] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).

Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose an undue burden or be unreasonably cumulative, under the standards described in Rule 26(b)(2)(C). Finally, even if the discovery sought satisfies all of these requirements, an opposing party generally may not be compelled to respond to it where the opposing party invokes and demonstrates the applicability of an appropriate privilege or protection.

Here, Defendants seek only a threshold ruling that the requested documents are relevant and a corresponding order requiring the SEC therefore to assemble and provide a privilege log of all

---

[4] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

documents responsive to Defendants' requests.  Generally, the party resisting discovery bears the burden of demonstrating that requested discovery falls outside the scope of relevancy under Rule 26.  *See Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 689 (S.D. Fla. 2011) (citation omitted).  When the relevancy of information sought cannot be discerned from a review of the discovery request, however, the party seeking to compel responses must demonstrate relevancy.  *See Rosenbaum v. Becker & Poliakoff, P.A.*, 2010 WL 623699, *14 (S.D. Fla. Feb. 23, 2010) (citation omitted).

Upon review of the record in this case, the relevancy of the information Defendants seek through their Motions to Compel is not clear to the Court.  In support of their Motions, however, Defendants argue that the documents requested in both of the Motions to Compel are relevant to determining the materiality of the alleged misrepresentations and omissions of fact and to ascertaining whether Defendants possessed the requisite scienter to have committed the violations asserted in the Amended Complaint.  The Court explores each contention below.

**1.  Materiality**

Counts I and II of the Amended Complaint charge that Defendants committed disclosure fraud, in violation of 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.  As Judge Scola recently explained in his Order on Defendants' Motion to Dismiss, "To prevail on a § 10(b) claim, a plaintiff must show that the defendant made a statement that was 'misleading as to a *material* fact." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318 (2011) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)) (internal quotation marks omitted).  Thus, to the extent that the information Defendants request pertains to the issue of materiality, it would certainly qualify as relevant under Rule 26.

Judge Scola further elaborated on the meaning of "materiality" in a securities-fraud case:

> In the Eleventh Circuit, the test for materiality in securities fraud actions is "whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action." [*SEC v.*] *Merch. Capital*, 483 F.3d [747,] 766 [(11th Cir. 2007)] . . . . In other words, a misrepresentation or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." [*SEC v.*] *Morgan Keegan & Co.*, 2012 WL 1520895, at *10 [(11th Cir. May 2, 2012)] (citing *SEC v. Ginsburg*, 362 F.3d 1292, 1302 (11th Cir. 2004)).
>
> Notably, in the Eleventh Circuit materiality is considered at least a mixed question of law and fact involving "assessments peculiarly within the province of the trier of fact." *Merch. Capital,* 483 F.3d at 766. . . .

*Bancorp*, 2012 WL 1936112 at *9-10.

In asserting that the documents that they seek through their First Motion to Compel bear on the issue of materiality, Defendants characterize the Complaint[5] as "lead[ing] with the allegation that Bancorp and Levan failed to disclose internal loan grades and the rest of the Complaint continu[ing] to hammer the theme . . . ." D.E. 31 at 7 (citations omitted). Thus, Defendants suggest that the SEC has charged them with violations of the Securities Exchange Act of 1934 and Exchange Act Rules based on Defendants' failure to specify the individual internal grades of loans, and they therefore reason that they should be entitled to obtain SEC documents "created from 2007 to 2009 addressing whether it is appropriate for financial institutions to disclose their internal loan grades." *Id.*

The Court agrees that some of the documents that Defendants seek would be relevant if the Amended Complaint faulted Defendants for not disclosing individual internal loan grades. But the

---

[5]Because Defendants' Motions to Compel were filed before the SEC filed its Amended Complaint, the Motions refer to the Complaint, not the Amended Complaint. The paragraphs that Defendants cite from the Complaint appear to be exactly the same in number and content as their corresponding paragraphs in the Amended Complaint.

Amended Complaint makes no such charge.  Instead, the SEC's disclosure counts against Defendants rely upon Defendants' alleged failures to disclose "the known *trend* that BankAtlantic had extended and/or downgraded to a non-passing status a material number of loans in the Commercial Residential portfolio," D.E. 34 at ¶ 77 (emphasis added); *see also id.* at ¶¶ 7, 31, 88, in violation of Item 303 of Regulation S-K, which instructs that a company's Management's Discussion and Analysis "shall provide information [regarding] . . . any known trends . . . that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on . . . income from continuing operations."  *See id.*; *see also* D.E. 36 at 3 (citing 17 C.F.R. § 229.303(a)(3)(ii)).

The difference is significant.  As relevant here, a "trend" is defined as "[a] general tendency or course of events . . . ."  *American Heritage Dictionary* 1851 (5th ed. 2011).  In other words, a single event does not a trend make.  Rather, a trend can be discerned only by looking at a collection of events.

Thus, in the Amended Complaint, the SEC points to the percentages of downgraded loans at various times to establish its allegation that a trend had developed:

> By the time Bancorp filed its Form 10-Q for the first quarter of 2007, the bank had internally downgraded nearly 25% of the Commercial Residential portfolio to a non-passing grade indicating a "special mention" or "substandard status, and had extended the loan terms for more than 26% of the portfolio.  By the time Bancorp filed its Form 10-Q for the second quarter, the bank had downgraded nearly 40% of the portfolio's loans to a non-passing grade, and had extended more than 39% of the portfolio.

D.E. 34 at ¶ 6.  Conspicuously absent from the Amended Complaint is any suggestion that Defendants had an obligation to reveal the specific grades of each individual loan making up the

trend. As a result, discovery geared towards identifying any disclosure requirements that the SEC or any other governmental agencies might have regarding the downgrading of individual loans is simply not relevant to the allegations contained in the Amended Complaint or to the SEC's theory of the case. Even if the SEC had promulgated a regulation stating that banks should not disclose the grades of individual loans, that circumstance would not refute the SEC's charges in this case that Defendants failed to disclose a trend of downgrades. Nor would it conflict with the SEC's guidance in Item 303 of Regulation S-K mandating that companies disclose known trends that management reasonably expects will have a material impact on business.

Defendants' Second Motion to Compel seeks responses to production requests that ask for similarly irrelevant materials. All of the requests at issue in Defendants' Second Motion to Compel seek information regarding whether a financial institution's receipt or non-receipt of federal financial assistance affects the SEC's investigation and charging decisions. In explaining the basis for these requests, Defendants state, "Central to interpreting the SEC's actions is any policy, official or unofficial, to treat the recipients of federal assistance differently when evaluating their disclosure obligations." D.E. 29 at 6; *see also id.* at 4. They do not further elaborate, other than to say that the requested documents "are central to understanding the SEC's decisions on whether, how, and why to sue other financial institutions battered by the same economic conditions as Bancorp."[6]  D.E. 41 at 6.

It is not immediately obvious to the Court why any SEC policy distinguishing between the treatment of recipients of federal assistance and of those entities not receiving governmental funds

---

[6]In making this argument, Defendants specifically disavow that they are pursuing a selective-prosecution or estoppel theory. *See id.*

— even if one existed — would be relevant to whether Defendants' alleged failure to disclose the trend of downgraded loans was material. Even if the SEC had internal, unpublished policies that distinguished between financial institutions that receive federal assistance and those that do not, that circumstance would not make it any more or less likely that Defendants' alleged failure to disclose the trend of loan downgrades would have been *viewed by the reasonable investor* as having significantly altered the "total mix" of information made available regarding Bancorp. *See Morgan Keegan & Co.*, 678 F.3d 1233, 2012 WL 1520895,[7] at *10 (11th Cir. May 2, 2012) (defining "materiality") (citing *SEC v. Ginsburg*, 362 F.3d at 1302).

**2. Scienter**

Nor are the requested materials relevant to the issue of scienter. As Judge Scola explained in his Order on the Motion to Dismiss, "To sufficiently allege scienter, a plaintiff must allege either an intent to deceive, manipulate or defraud, or severe recklessness." *Bancorp*, 2012 WL 1936112, *16 (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008)) (internal quotation marks omitted). The Eleventh Circuit defines "severe recklessness" as follows:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Mizzaro*, 544 F.3d at 1238 (citation omitted). In other words, scienter effectively requires a fraudulent intent. *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1299-1300 (11th

---

[7] As of the date of this Order, Westlaw has not yet assigned Federal Reporter page numbers to the individual pages within the *Morgan Keegan & Co.* opinion. Therefore, this Order refers to the Westlaw page numbers.

Cir. 2011).

Whatever the SEC may have been investigating or deciding not to investigate about other banks, though, cannot provide probative information regarding what Bancorp and Levan thought or intended when they allegedly made the omissions from Bancorp's disclosures. Only what Bancorp and Levan knew or understood is relevant to that determination. Thus, unless Bancorp and Levan knew of the SEC's internal policies and investigations and relied upon them in deciding to omit the information about the allegedly known trend of downgrades on commercial loans, the SEC's internal policies and investigations of other entities have no bearing on the issue of scienter. And only Bancorp and Levan — not the SEC — can identify what they relied upon in making disclosure decisions in this matter. As a result, the SEC's internal policies and investigation decisions, in and of themselves, are not relevant to the issue of scienter. *See SEC v. Bank of Am. Corp.*, 2009 WL 4797741, *1 (S.D.N.Y. Dec. 8, 2009).

### *III.  Conclusion*

For the foregoing reasons, Defendants BankAtlantic Bancorp, Inc., and Alan B. Levan's Motion to Compel Production of Documents Regarding the SEC's Investigation and Enforcement Actions Against Financial Institutions that Received Federal Assistance [D.E. 29] and Defendants Bancorp and Levan's Motion to Compel Production of Documents Regarding Financial Institutions' Disclosures [D.E. 31] are **DENIED**.

**DONE and ORDERED** this 26th day of June 2012.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Robert N. Scola, Jr.
Counsel of Record