**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:12-cv-60082-DPG

SECURITIES AND EXCHANGE COMMISSION,       **ORAL ARGUMENT
REQUESTED**

      Plaintiff,

v.

BANKATLANTIC BANCORP, INC. and
ALAN B. LEVAN,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR A NEW TRIAL**

STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
Eugene E. Stearns
Gordon M. Mead, Jr.
Jenea M. Reed
Cecilia D. Simmons
Matthew C. Dates
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

STANDARD FOR GRANTING A NEW TRIAL ........................................................................ 2

SIGNIFICANT PREJUDICIAL ERRORS THAT SUBSTANTIALLY IMPACTED DEFENDANTS' RIGHTS REQUIRE A NEW TRIAL ABSENT THE ENTRY OF JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANTS .................................. 3

I.      BBX and Levan Are Entitled to a New Trial Because of the Falsity Ruling and Instruction. .............................................................................................................. 3

      A.      The Falsity Ruling Violates the Most Basic Legal Principles, as Was Further Shown at Trial. ......................................................................... 4

      B.      The Falsity Instruction Provides an Independent Basis for Reversal. .................... 5

      C.      The Falsity Ruling and Instruction Prejudiced the Outcome of the Trial on Every Issue. .............................................................................. 6

II.     BBX and Levan Are Entitled to a New Trial Because the Testimony of the SEC's Expert Was Incompetent and Inadmissible. ........................................................... 7

      A.      All of Turner's Opinions Were Inadmissible Because He Formed Conclusions without Ever Evaluating the Facts. ..................................... 8

      B.      All of Turner's Opinions Were Inadmissible Because He Knew Nothing about the Florida Real Estate Market. .................................................. 9

      C.      Turner's Disclosure Opinions Were Further Shown to be Inadmissible at Trial. ............................................................................................ 10

      D.      Turner's Held-for-Sale Opinions Were Further Shown to be Inadmissible at Trial. ............................................................................................ 10

            1.      Turner engaged in impermissible mind-reading. ..................................... 11

            2.      Turner admitted that auditors would not have relied on the "bids" that formed the basis for his held-for-sale opinion. ................................ 11

            3.      Turner's opinions are inadmissible for many other, independent reasons identified elsewhere. ................................................................ 12

III.    BBX and Levan Are Entitled to a New Trial Because the Verdict is Against the Great Weight of the Evidence. ............................................................................. 12

i

IV.    BBX and Levan Are Entitled to a New Trial Based on the Court's Refusal to Give Requested Instructions That Were Consistent with the Law. ...........................................13

    A.    Instructions Regarding Scienter...........................................................................13

    B.    Instruction Regarding BBX's Disclosures about the Real Estate Market...............15

    C.    Instructions Regarding GAAP............................................................................16

V.    BBX and Levan Are Entitled to a New Trial Based on Prejudicial Comments by the SEC During Closing Argument. ...................................................................................17

VI.    BBX and Levan Are Entitled to a New Trial Based on Various Evidentiary Errors. ........18

    A.    The Court Improperly Admitted Water-Cooler Gossip Into Evidence...................18

    B.    The Court Erred in Excluding Certain Statements of Federal Officials, Which Were Relevant to Negate Scienter. ............................................................18

    C.    The Court Erroneously Excluded the PwC "Look-Back," Which Significantly Prejudiced the Defendants. ............................................................19

REQUEST FOR ORAL ARGUMENT......................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
  432 F. Supp. 2d 1319 (S.D. Fla. 2006)................................................................3, 12

*Backman v. Polaroid Corp.*,
  893 F.2d 1405 (1st Cir. 1990), 910 F.2d 10 (1st Cir. 1990) (en banc) ....................13

*Badger v. S. Farm Bureau Life Ins. Co.*,
  612 F.3d 1334 (11th Cir. 2010) ..................................................................................5

*Benkwith v. Matrixx Initiatives, Inc.*,
  467 F. Supp .2d 1316 (M.D. Ala. 2006).......................................................................8

*Booth v. Pasco Cnty.*,
  757 F.3d 1198 (11th Cir. 2014) ................................................................................13

*City of Pontiac Gen. Employees Retirement Sys. v. Schweitzer-Mauduit Int'l*,
  806 F. Supp. 2d 1267 (N.D. Ga. 2011) ...............................................................16, 20

*Claar v. Burlington N. R.R. Co.*,
  29 F.3d 499 (9th Cir. 1994)........................................................................................8

*Cook v. Sheriff of Monroe County, Fla.*,
  402 F.3d 1092 (11th Cir. 2005) ..............................................................................7, 8

*Corey v. Jones*,
  650 F.2d 803 (5th Cir. 1981) ...................................................................................13

*Cutsforth v. Renschler*,
  235 F. Supp. 2d 1216 (M.D. Fla. 2002) ...............................................................16, 20

*Deas v. Paccar, Inc.*,
  775 F.2d 1498 (11th Cir. 1985) .................................................................................3

*Druskin v. Answerthink, Inc.*,
  299 F. Supp. 2d 1307 (S.D. Fla. 2004).................................................................16, 20

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976).................................................................................................13

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .................................................................................15

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) (en banc) .....................................................................16

iii

*In re Homebanc Corp. Sec. Litig.*,
706 F. Supp. 2d 1336 (N.D. Ga. 2010) ................................................................13

*In re Jiangbo Pharm., Inc. Sec. Litig.*,
884 F. Supp. 2d 1243 (S.D. Fla. 2012) ..........................................................16, 20

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................12

*In re Rezulin Prods. Liability Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................11

*In re Williams Sec. Litig.*,
496 F. Supp. 2d. 1195 (N.D. Okla. 2007),
*aff'd*, 558 F.3d 1130 (10th Cir. 2009) ................................................................12

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................7, 11

*MacPherson v. Univ. of Monteballo*,
922 F.2d 766 (11th Cir. 1991) ................................................................................3

*McWhorter v. City of Birmingham*,
906 F.2d 674 (11th Cir. 1990) ................................................................................17

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ................................................................................5

*Meyer v. St. Joe Co.*,
2012 WL 94584 (N.D. Fla. Jan. 12, 2012),
*aff'd*, 710 F.3d 1189 (11th Cir. 2013) ..........................................................16, 20

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ................................................................13, 14

*Peat, Inc. v. Vanguard Research, Inc.*,
378 F.3d 1154 (11th Cir. 2004) ................................................................................3

*Perry v. United States*,
755 F.2d 888 (11th Cir. 1985) ................................................................................8

*Rabun v. Kimberly-Clark Corp.*,
678 F.2d 1053 (11th Cir. 1982) ................................................................................3

*SEC v. Gane*,
2005 WL 90154 (S.D. Fla. Jan. 4, 2005) ................................................................13

*SEC v. Merchant Capital, LLC,*
   483 F.3d 747 (11th Cir. 2007) ................................................................. 5

*SEC v. Snyder,*
   292 Fed. Appx. 391 (5th Cir. 2008) ....................................................... 14

*SEC v. Yun,*
   327 F.3d 1263 (11th Cir. 2003) ............................................................... 5

*Tindall v. H&S Homes, LLC,*
   2012 WL 3241885 (M.D. Ga. Aug. 7, 2012) ........................................ 11

*United Food and Commercial Workers Union Local 880 Pens.*
   *Fund v. Chesapeake Energy Corp.,*
   __ F.3d __, 2014 WL 6725435 (10th Cir. Aug. 8, 2014) ...................... 13

*United States v. Masferrer,*
   367 F. Supp. 2d 1365 (S.D. Fla. 2005) ................................................. 12

*United States v. Sayakhom,*
   186 F.3d 928 (9th Cir. 1999) ................................................................. 13

*Viterbo v. Dow Chemical Co.,*
   826 F.2d 420 (5th Cir. 1987) ................................................................... 8

**Rules**

Fed. R. Civ. P. 50 ........................................................................................ 3

Fed. R. Civ. P. 50(c)(1) ............................................................................... 3

Fed. R. Civ. P. 59 ........................................................................................ 1

Fed. R. Civ. P. 59(a)(1)(A) .......................................................................... 2

Fed. R. Evid. 401-03 .................................................................................. 18

Fed. R. Evid. 703 ....................................................................................... 11

Defendants BBX Capital Corporation ("BBX"), formerly known as BankAtlantic Bancorp, Inc., and Alan B. Levan respectfully move for a new trial pursuant to Federal Rule of Civil Procedure 59, and submit the following memorandum in support thereof:

**INTRODUCTION**

In their Rule 50 motion, defendants seek judgment in their favor on all the issues remaining in this litigation. The jury's verdict, which followed the Court's instruction that three sentences in an earning conference call were objectively false and misleading, was based on an erroneously entered summary judgment. It would not be appropriate to retry that claim as the jury's verdict rejecting claims that the first quarter earnings conference call and both the first and second quarter 10-Q's leaves no basis for disclosure liability. With respect to the held-for-sale claim, the SEC failed to even remotely meet its burden of proof to establish a single element of the claim and final judgment is compelled. This motion is brought in the event the Court believes that any claim can be retried in light of this record. Most certainly, that part of the verdict where the SEC prevailed cannot form the basis for a final judgment against the defendants on any issue.

The partial summary judgment ruling determining that three sentences in the July 25, 2007 earnings conference call were objectively false and misleading and the jury instruction that followed constitute the clearest legal errors imaginable. The instruction was prejudicial with respect to every claim that was tried, all of which involved issues of credibility. With respect to the disclosure claim, prejudice is self evident as the jury was not permitted to decide one of the critical fact questions involved with the claim. No jury hearing the falsity instruction, in which the Court singled out three sentences in the midst of lengthy disclosure, could conclude that the sentences were not material. Any reasonable jury would assume that the mere act of singling out the sentences established their importance. Nor would a reasonable jury not find scienter, as the

instruction directed a conclusion that Alan Levan was a liar when he spoke on July 25 and again when he took the stand and affirmatively stated that the sentences were true.

With respect to the held-for-sale claim, prejudice is equally clear but for a different reason. In an effort to prove that BankAtlantic had affirmatively made a decision to sell certain loans, despite the fact that the BankAtlantic/JMP agreement and all of the witnesses said otherwise (the agreement reserved such a decision to a later time to be made by the Board of Directors), the SEC argued that Alan Levan was lying when he testified that no decision had been made. The instruction on falsity not only affirmatively told jurors that Mr. Levan had lied in the July 25, 2007 earnings conference call, it placed Mr. Levan in the untenable position of appearing to lie again on the stand when, in fact, his testimony was true.

Armed with the erroneous instruction on falsity, SEC counsel told the jury 9 times in his opening statement that Alan Levan was "a liar," a charge repeated 17 times in the SEC's closing argument. The instruction prevented defendants from having a fair trial.

With respect to both the disclosure claim and the held-for-sale claim, the SEC failed to establish the essential element of proof. A number of other evidentiary and instructional errors outlined below each independently tainted the trial. If this Court does not grant defendants' post-trial motion for judgment as a matter of law, it should grant this motion for a new trial.[1]

## STANDARD FOR GRANTING A NEW TRIAL

After a jury trial, the Court is entitled to grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). New trials have been granted under a variety of circumstances including an unfair

---

[1] References to "DE" are to docket entries. References to "Tr. __" are to pages of the trial transcript. References to "D-__" and "P-__" are to exhibits admitted into evidence. References to "Ex. __" are to the exhibits to the Declaration of Jenea M. Reed Submitted in Support of Defendants Post-Trial Motions and dated January 12, 2015.

trial or miscarriage of justice, a verdict against the weight of the evidence, erroneous admission of deficient expert evidence, or erroneous admission or rejection of evidence or giving or refusing requested jury instructions.[2]   When considering a new trial motion, the Court is free to independently weigh evidence, and is not required to view the evidence in the light most favorable to the non-movant.  *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982).

**SIGNIFICANT PREJUDICIAL ERRORS THAT SUBSTANTIALLY IMPACTED DEFENDANTS' RIGHTS REQUIRE A NEW TRIAL ABSENT THE ENTRY OF JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANTS**

Judgment as a matter of law in favor of the defendants is required, but if this Court denies that motion, at the very least a new trial is required.  And if this Court grants defendants' motion for judgment as a matter of law, it must also rule conditionally on this motion.  *See* Fed. R. Civ. P. 50(c)(1).

**I.     BBX and Levan Are Entitled to a New Trial Because of the Falsity Ruling and Instruction.**

The prior judge concluded on summary judgment that "there is no genuine issue that [Alan] Levan's statements in the [second quarter] earnings conference call are false." DE 234 at 15. During oral argument on defendants' renewed Rule 50 motion, this Court explained that absent those prior rulings, it "probably" would have put the falsity issue to the jury because the SEC conceded that "there [were] genuine issues regarding the broader issue[s]" of "materiality and scienter" and the Court typically would not "parse that [falsity issue] out" and would "leave it for trial."  Tr. 4547 (DE 426).  But the Court noted, because Judge Ungaro and Judge Scola ruled on the issue and resolved it "as was their right to do, and just philosophically substituting for Judge Scola, I don't think it's my place to substitute my judgment."  *Id.*

---

[2]  *See, e.g., Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1355-56 (S.D. Fla. 2006); *MacPherson v. Univ. of Monteballo*, 922 F.2d 766, 777 (11th Cir. 1991); *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1165 (11th Cir. 2004); *Deas v. Paccar, Inc.*, 775 F.2d 1498, 1506 (11th Cir. 1985).

This Court has before it for the first time the defendants' post-trial motions, which present new, additional reasons that the July 25 falsity ruling must be undone and new, additional means for doing so.   After presiding over a six-week trial, this Court need not, should not, and cannot ignore what it learned during that trial.  And the Eleventh Circuit, under any legal or philosophical view, will not defer to Judge Ungaro's or Judge Scola's or this Court's legal rulings on the issue.

> **A.    The Falsity Ruling Violates the Most Basic Legal Principles, as Was Further Shown at Trial.**

As defendants have repeatedly explained, the pretrial summary judgment ruling of falsity was a palpable legal error because defendants had cited testimony, and overwhelming additional admissible evidence, showing that Alan Levan's answer on the July 25, 2007 shareholder conference call was "absolutely" true and was not materially false or misleading.  *E.g.*, DE 308; *see also* DE 116; DE 117; DE 127; DE 130; DE 131; DE 132; DE 252; DE 253; DE 256; DE 275; D.E. 309; DE 310.  The testimony, evidence, and defendants' papers also explained in great detail why those statements were true, and those papers are incorporated by reference.

"Federal Rule of Civil Procedure 56 and countless decisions applying it express the modern rule that a case should be put to the jury if there is any genuine issue of material fact, including one created solely by the testimony of a party."  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013); *see also* DE 308 at 17-19 & n.7 (collecting authorities).  Granting partial summary judgment on the falsity of the three sentences and taking that issue away from the jury constitutes clear legal error.

At trial, the falsity ruling unraveled even further. As shown in the defendants' accompanying motion for judgment as a matter of law, the critical facts showing the error in granting the motion for summary judgment were not only established by witnesses and exhibits at trial but were undisputed.  The SEC did not create a fact question on falsity, let alone establish

4

under a much higher standard that it was entitled to a ruling as a matter of law or instruction that the three sentences on the July 25, 2007 conference call were false.

### B.    The Falsity Instruction Provides an Independent Basis for Reversal.

The falsity instruction, even if legally supportable in isolation, would still be reversible error because the instruction as given confused and misled the jury on the applicable legal principles.  An improper instruction will be reviewed *de novo* to determine whether it misstated the law or misled the jury. *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1339 (11th Cir. 2010).  The Eleventh Circuit reverses if there is "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *SEC v. Yun*, 327 F.3d 1263, 1281 & n.39 (11th Cir. 2003).  Moreover, jury instructions must show no tendency to confuse or to mislead the jury with respect to the applicable principles of law.  *Id.*

*First*, the falsity instruction confused the jury on materiality.  The Eleventh Circuit recognizes falsity and materiality are so interlinked that it has listed them as a single element. *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013); *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007).  The jury, instructed by the Court that three sentences out of thousands of pages of disclosure deserved special attention because falsity had been determined as a matter of law, would inevitably have assumed that the three sentences were important or material.

*Second*, the falsity instruction confused the jury on scienter.  The jury was presented with much of the evidence Alan Levan had before him on July 25.  The Court was present to hear that same evidence and nonetheless instructed the jury that the three sentences were false.  The only reasonable inference the jury could have drawn is that Alan Levan should have known the statements were false.

5

### C.   The Falsity Ruling and Instruction Prejudiced the Outcome of the Trial on Every Issue.

Prior to trial, this Court ruled that the SEC could tell the jury, before any evidence had been heard, that a securities fraud defendant had lied.

During opening statement, SEC's counsel framed its case as one "about lies" and used the words lie or lying nine times.  Tr. 248 (DE 352); *see also* Tr. 253, 255, 280.  The SEC used the falsity instruction as a platform to—contrary to the most basic principles of securities laws—not only focus on a single answer in isolation, but to slice it and dice it into three sentences.  The SEC's counsel said three separate times that each "statement has already been ruled false by the Court."  Tr. 268-69 (DE 352).

During the trial, defense counsel had to present testimony consistent with witness's prior sworn testimony and what they truly believed, namely that the three sentences were true.  Defendant Alan Levan, Vice Chairman Jack Abdo, former CFO Valerie Toalson, and former Chief Credit Officer Jeffrey Mindling all so testified.   Tr. 3860-64 (Levan; DE 420); Tr. 894-95 (Toalson; DE   358), Tr. 1368-69 (Mindling; DE 368), Tr. 3420-24 (Abdo; DE 417).   That testimony was unrebutted.

After the close of evidence, this Court instructed the jury that a defendant in a securities fraud case had made three false statements, while telling the jury to somehow separately consider materiality and scienter.  Tr. 4669-70 (DE 427).  As prior experience from the private securities litigation showed and defendants had repeatedly warned, such overwhelming prejudice could not be overcome.

The instruction itself branded Alan Levan and other key witnesses liars, in a way that infected the held-for-sale case.  The SEC made that case about whether Alan Levan intended to sell loans and whether he intended to mislead potential investors in loans, which grossly distorted the

law, but also made his credibility central to that claim.  Obviously the falsity instruction destroyed any hope that the jury could independently and fairly evaluate Alan Levan's testimony or the testimony of the other witnesses who testified that the July 25 statements were true.

To firmly cement the point in the jury's mind, SEC counsel used the word lie *17 times* in closing argument.  Tr. 4681, 4682, 4684, 4694-95, 4704, 4713, 4716, 4719 (SEC closing; DE 427).  And, again, the SEC split the July 25 answer into three pieces and argued that each was "false and misleading as a matter of law."  Tr. 4698-99 (SEC closing; DE 427).

The Court's tautological instructions created an irrefutable argument for the SEC about the July 25 conference call and Alan Levan's credibility that had nothing to do with the testimony or evidence.  The business day following closing statements and instructions, the jury found the defendants liable for securities fraud based on the July 25 conference call and on the held-for-sale claim.

## II.   BBX and Levan Are Entitled to a New Trial Because the Testimony of the SEC's Expert Was Incompetent and Inadmissible.

The proponent of expert testimony must show by a preponderance of evidence the expert witness's qualifications, the reliability of his opinions, and their helpfulness.  *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005)**.**  Experts must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Lynn Turner's proposed expert testimony did not pass muster under *Daubert* before trial for all of the reasons expressed in defendants' pre-trial motions, D.E. 156; D.E. 162; D.E. 211; D.E. 277; D.E. 285, which are incorporated by reference.   Trial further illustrated the inadmissibility of his testimony.

**A.    All of Turner's Opinions Were Inadmissible Because He Formed Conclusions without Ever Evaluating the Facts.**

An expert that reaches opinions prior to taking a case and then only looks for supporting evidence is unreliable and inadmissible.[3]   And expert witnesses are not allowed to serve as parrots for trial counsel, offering in the guise of expertise little more than closing argument. *Cook*, 402 F.3d at 1111.

After spending at most two days reviewing BBX's public disclosures and the SEC's complaint, in August 2012, Turner agreed to give expert testimony.  Tr. 2301 (Turner; DE 391). He explained on direct that after signing the engagement letter there is an "iterative process throughout the time period that you are working on to decide whether or not you can render an opinion and a report."  Tr. 2069 (Turner; D.E. 389).  Yet, at his deposition, Turner did not remember how much work he had done between August 2012 and March 2013.  Tr. 2306 (Turner; DE 391).  And his time records show that prior to the month his report was due he personally billed a single hour in February.  Tr. 2305 (Turner; DE 391), 2344 (Turner; DE 392). That is hardly "iterative."

In fact, Turner billed 37 of his 38 hours spent supposedly preparing his 58-page report during the same month it was due.  Tr. 2305 (Turner; DE 391), 2344 (Turner; DE 392).  And Turner testified that, in the course of that process, he "directed the staff to search for and consider additional evidence to support and provide a sound basis for my opinions."  Tr. 2343-44 (Turner; DE 392).  Turner's results and opinions were a foregone conclusion, his opinions were unreliable, and his testimony inadmissible.

---

[3]  *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502-03 & n.5 (9th Cir. 1994); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 423 n.2 (5th Cir. 1987); *Benkwith v. Matrixx Initiatives, Inc.*, 467 F. Supp .2d 1316, 1325 (M.D. Ala. 2006).

**B.     All of Turner's Opinions Were Inadmissible Because He Knew Nothing about the Florida Real Estate Market.**

Turner admitted, as he was compelled to, that BBX disclosed its exposure to the Florida real estate market repeatedly and well in advance of the third quarter of 2007.  Tr. 2484-85, 2492 (Turner; DE 393).  He also admitted that the only common feature that impacted the non-builder land bank loans was their disclosed exposure to the troubled Florida real estate market.  Tr. 2234-36, 2349-50 (Turner; DE 391; DE 392).  And he admitted the troubled Florida real estate market was the sole common cause of his so-called red flags for the non-builder land bank loans, namely downgrades, extensions, interest reserve depletion, and slowed absorption  Tr. 2123-24, 2351-52, 2363-64, 2372-73, 2413, 2480 (Turner; DE 389; DE 392; DE 393).  He admitted that BBX disclosed in its third quarter earnings release that the third quarter Florida real estate collapse had caused its losses. Tr. 2335-36 (Turner; DE 391); Tr. 2508-10 (Turner; DE 393).  He nonetheless lacked any qualifications to, and did not, perform any analysis of whether the forewarned risk of the collapsing Florida real estate market was the cause of the third quarter losses.  Tr. 2508, 2510-11 (Turner; DE 393).  Turner's disclosure opinions thus must be excluded as unqualified, unreliable, and unhelpful.

Similarly, on the held-for-sale issue, Turner's opinions about the value at which BankAtlantic's loans should have been booked as of December 31, 2007 rested almost entirely on an undated JMP grid, which Turner guessed had been created in mid-February 2008.  Tr. 2541 (Turner; DE 393).   He acknowledged that he knew nothing about the Florida real estate market but had read in the papers that it was deteriorating.  Tr. 2317, 2580 (Turner; DE 391; DE 394).  He nonetheless lacked any qualifications to, and did not, perform any analysis to backdate those mid-February values to December 31, 2007 to adjust for declines in the Florida real estate market.  Tr. 2317, 2580 (Turner; DE 391; DE 394).  Turner's held-for-sale opinions thus were

unqualified, unreliable, and unhelpful.

C.   **Turner's Disclosure Opinions Were Further Shown to be Inadmissible at Trial.**

At trial, the superficiality of Turner's failure to perform the admittedly required analysis of the underlying loans in BankAtlantic's portfolios additionally illustrates why every one of his disclosure opinions is inadmissible.

Turner testified and admitted repeatedly that one would need to examine individual loans and loan files to understand the risks in BankAtlantic's portfolios.  Tr. 2100, 2137 (Turner; DE 389).   Turner limited his non-disclosure theory to the non-builder land bank loans but then admitted he knew nothing about them:  he did not review a sampling of loans or loan files, Tr. 2346 (Turner; DE 392); he did not review any loans not on loan watch lists, Tr. 2347 (Turner; DE 392); he did not review any loans that had not been extended, Tr. 2347, 2453 (Turner; DE 392; DE 393); he did not analyze the quality of the borrowers in any of the extensions granted, Tr. 2348, 2372-75 (Turner; DE 392); he did not look for any cause of extensions other than slow sales, Tr. 2383 (Turner; DE 392); he could not identify the size of the largest loan, Tr. 2327 (Turner; DE 391); and he could not identify the size of the smallest loan, Tr. 2327 (Turner; DE 391).  He also knew nothing about the effects of the Florida real estate market on those loans. Tr. 2480, 2506-07 (Turner; DE 393).  He had no opinion about what defendants should have disclosed. Tr. 2492 (Turner; DE 393).  He read some bar charts and recited the SEC's arguments, but otherwise he had no opinions at all, let alone qualifications or a reliable basis for saying anything helpful to the jury.

D.   **Turner's Held-for-Sale Opinions Were Further Shown to be Inadmissible at Trial.**

At trial, Turner further revealed that his held-for-sale and fair value opinions lacked any support and did not satisfy the requirements for admitting expert testimony.

### 1. Turner engaged in impermissible mind-reading.

Pursuant to the JMP engagement letter, the right to make any future decision to sell remained in the hands of BBX's board of directors and management.  But the SEC could not identify evidence or testimony reflecting such a decision, so Turner resorted to mind-reading. Tr. 2526-27 (Turner; DE 393).  Experts, however, are prohibited from offering opinions or testimony about a defendant's intent or motive.  *Tindall v. H&S Homes, LLC*, 2012 WL 3241885 at *12 (M.D. Ga. Aug. 7, 2012); *see also In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Thus, his held-for-sale opinion should be excluded on this basis alone.

### 2. Turner admitted that auditors would not have relied on the "bids" that formed the basis for his held-for-sale opinion.

In addition to "employ[ing] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire Co.*, 526 U.S. at 152, any inadmissible evidence relied on by an expert must be facts or data that "experts in the particular field would reasonably rely on . . . in forming an opinion," Fed. R. Evid. 703.  Turner's opinion based on the 50 percent numbers listed on the JMP grid fails on both counts.

The entire basis for Turner's conclusion that BankAtlantic should have taken a $53 million provision in the fourth quarter of 2007 was an undated matrix that listed Farallon and Lehman as offering 50 percent of "book" for the loans.  Ex. 2.  No one from Farallon testified at trial.  No one from Lehman testified at trial.  The JMP witnesses remembered nothing meaningful about the matrix.  Tr. 1761-63, 1765 (Rivett; DE 385); *see also* Tr. 1753-54 (Rivett; DE 385) (excluding grid).  And Turner testified that he knew nothing about the numbers attributed to Farallon and Lehman beyond what was listed on the bare-bones grid.  Tr. 2569-71 (Turner; DE 394).

Even worse, Turner admitted that no auditor would rely on the 50 percent grid numbers to establish values.  He testified that a certified public accountant or auditor would not draw a

conclusion of value from the grid alone, "would look for more," and would follow up with Farallon and Lehman. Tr. 2572-73 (Turner; DE 394). Yet neither Turner nor the SEC did any of that and thus Turner's opinion is unreliable, unhelpful, and inadmissible under Rule 703.

### 3. Turner's opinions are inadmissible for many other, independent reasons identified elsewhere.

As explained in defendants' accompanying motion for judgment as a matter of law, pp. 20-23, Turner's fair value opinions cannot even create a fact question, but those are also independent reasons that they are inadmissible. For each of those additional, independent reasons, his fair value opinion must be excluded as unreliable and unhelpful.

*          *          *

Courts have repeatedly excluded valuation testimony more competent than Turner's. In *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1375-76 (S.D. Fla. 2005), for example, another judge in this district excluded proposed expert testimony that loans were not worth their face value where the proposed expert did not "study any of the fundamentals" of the loans, "the collateral value that might have been securing the loan, or the source of repayment of the loan."[4] All of these cases further show that Turner's fair value opinion was inadmissible.

## III. BBX and Levan Are Entitled to a New Trial Because the Verdict is Against the Great Weight of the Evidence.

All of the undisputed evidence identified in defendants' accompanying motion for judgment as a matter of law shows that no reasonable jury could have found in favor of the SEC. But, at the very best for the SEC, the jury's verdict was against the great weight of the evidence and a new trial is required. *See Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1355-56 (S.D. Fla. 2006).

---

[4] *See also In re Williams Sec. Litig.*, 496 F. Supp. 2d. 1195, 1242-47 (N.D. Okla. 2007) (citations omitted), *aff'd*, 558 F.3d 1130 (10th Cir. 2009); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1217-20 (S.D. Cal. 2010).

**IV.     BBX and Levan Are Entitled to a New Trial Based on the Court's Refusal to Give Requested Instructions That Were Consistent with the Law.**

A new trial is required when a court fails to give a legally correct instruction to the prejudicial detriment of the requesting party. *See Booth v. Pasco Cnty.*, 757 F.3d 1198, 1208 (11th Cir. 2014). A party is entitled to have the jury instructed on its theory of the case when the evidence supports that theory. *Corey v. Jones*, 650 F.2d 803, 807 (5th Cir. 1981). The Court erred in refusing to give multiple instructions requested by the defendants, and each error independently requires a new trial if judgment is not entered in favor of the defendants.

**A.     Instructions Regarding Scienter.**

The SEC proposed, and the Court adopted, a bare-bones, three-sentence instruction on scienter, Tr. 4583 (DE 426), which did not contemplate the complex factual record or issues in this case, namely a multi-billion bank holding company confronted with difficult questions about how to report credit risks and how to value its loans shortly before and immediately after the onslaught of the financial crisis.

Defendants proposed separate instructions on scienter, good faith, reliance on accountants, and the absence of stock sales. D.E. 407 (Proposed Instruction Nos. 20, 21, 24, 26). The proposed instructions on these points would have clarified that:

- The SEC must prove that BBX or Levan were aware of both the materiality of any undisclosed fact and that its non-disclosure would likely lead investors.[5]

- One who expresses an opinion honestly or states a fact honestly believed to be true is not chargeable with fraudulent intent, even though his, her, or its opinion is erroneous or his, her, or its belief is mistaken.[6]

---

[5] *See, e.g., SEC v. Gane*, 2005 WL 90154, at *15 (S.D. Fla. Jan. 4, 2005); *United Food and Commercial Workers Union Local 880 Pens. Fund v. Chesapeake Energy Corp.,* __ F.3d __, 2014 WL 6725435, at *8 (10th Cir. Aug. 8, 2014).

[6] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976); *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999); *Backman v. Polaroid Corp.*, 893 F.2d 1405, 1418 (1st Cir. 1990), 910 F.2d 10 (1st Cir. 1990) (en banc).

- The fact that neither Defendant sold stock to profit from this supposed scheme weighs against inferring that they acted knowingly or with severe recklessness.[7]

- Good faith reliance on an accountant's advice represents possible evidence of an absence of any intent to defraud.[8]

Each of these points was supported by legal authority and none was sufficiently addressed by the other instructions given to the jury regarding scienter.

The absence of these legally accurate instructions prejudiced defendants. *First*, the definition of scienter provided to the jury failed to establish that severe recklessness must go beyond knowledge of some undisclosed fact to knowledge of materiality and knowledge that the misstatement or omission would mislead shareholders. It also failed to explain that an honestly held opinion or belief cannot create liability. Given that Alan Levan and Jack Abdo sat on the Major Loan Committee and were familiar with many of the facts surrounding the major credits, as all prudent bank executives should be, a finding of falsity and materiality would have eliminated the scienter requirement under the instructions given. And defense counsel lacked the legal ammunition necessary to argue effectively that, at best for the SEC, defendants simply made an honest mistake.

*Second*, the instruction that the absence of stock sales weighed against a finding of scienter was critical. The SEC repeatedly argued that Alan Levan and Jack Abdo had a significant stake in BBX and therefore had a motive to inflate the stock price. Tr. 4028-29 (Levan; DE 422); Tr. 4683-84 (SEC closing; DE 427). But the SEC did not present any evidence that Levan or Abdo sold any stock during the relevant time period, which eliminates any motive to defraud and undercuts the inference of scienter. This is black-letter law. *E.g., Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230,

---

[7] *See, e.g., Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008); *In re Homebanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1359 (N.D. Ga. 2010).

[8] *SEC v. Snyder*, 292 Fed. Appx. 391, 406 (5th Cir. 2008).

1253 (11th Cir. 2008).  The failure to give this instruction was particularly prejudicial given the undisputed evidence that BBX, in which Alan Levan owned an enormous stake, purchased *millions* of shares during the period in which the SEC argues that Alan Levan and BBX were inflating BBX's stock price, D-15 at 34; P-62, and held those shares when BBX's stock price cratered in late October 2007.  The defendants were entitled to this instruction.

*Finally*, defendants were entitled to an instruction that the advice of accountants could negate scienter.  The evidence showed that on November 29, 2007 BBX's CFO Valerie Toalson sent an email to Alan Levan indicating that BBX's outside auditor PwC was "generally comfortable" with the JMP engagement and only recommended that "documentation have wording that clearly represents management's intent and is not misleading."  D-713; *see also* Tr. 922-23 (Toalson; DE 358); Tr. 3967-68 (Levan; DE 421).  In other words, the last word that Alan Levan received and relied on was that the Chief Financial Officer, the Controller, and the outside auditors were "comfortable" with the accounting treatment.  Tr. 3968 (Levan; DE 421).  Defendants were therefore entitled to a specific instruction on reliance on accountants.

### B.    Instruction Regarding BBX's Disclosures about the Real Estate Market.

Defendants requested an instruction regarding their comprehensive disclosure of BBX's significant exposure to the Florida real estate market, as determined by the Eleventh Circuit in prior litigation involving the same facts.  D.E. 407 (Proposed Instruction No. 16). This instruction was a plain English version of language from the Eleventh Circuit's opinion in *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 729-30 & n.29 (11th Cir. 2012).

The defendants were prejudiced by the failure to give this instruction because they had argued all along that they disclosed the negative trend or uncertainty and material information that was materially impacting their business—namely the Florida real estate market. Giving the falsity instruction based on a pre-trial summary judgment ruling that has evaded appellate review, while

simultaneously refusing to give an instruction based on a published Eleventh Circuit opinion, was an egregious and enormously prejudicial error.

### C.     Instructions Regarding GAAP

The SEC and defendants offered vastly different proposed instructions regarding generally accepted accounting principles ("GAAP"), and the Court adopted the SEC's proposed instruction nearly in full, over objections.  DE 407 (SEC's Proposed Instruction No. 27); DE 407 (Defendants' Proposed Instruction No. 13); Tr. 4561, 4565-70 (DE 426).

The Court's instruction omitted significant language that clarified key legal points, including:

- Circumstances will give rise to fraud only where differences in calculations are not merely the difference between two permissible judgments.[9]

- The absence of a refusal of the outside auditors to sign opinion letters attached to financial statements, the absence of auditor resignations, and the absence of restatements can all weigh against finding scienter in securities cases alleging accounting fraud.[10]

Each of these points was supported by legal authority, as cited in the footnotes below. Neither point was addressed by the other instructions actually given to the jury.  And the absence of these legally accurate instructions prejudiced defendants. The instruction regarding disagreements between reasonable accountants was particularly important in this case given the parties' experts disagreed and Turner's opinion conflicted with BBX CFO Valerie Toalson's ultimate conclusion that the accounting treatment was proper based on the advice of outside

---

[9] *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc); *Meyer v. St. Joe Co.*, 2012 WL 94584, at *10 (N.D. Fla. Jan. 12, 2012), *aff'd*, 710 F.3d 1189 (11th Cir. 2013); *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1260 (M.D. Fla. 2002).

[10] *In re Jiangbo Pharm., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1262-63 (S.D. Fla. 2012); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004); *City of Pontiac Gen. Employees Retirement Sys. v. Schweitzer-Mauduit Int'l*, 806 F. Supp. 2d 1267, 1296 (N.D. Ga. 2011).

accountants.  D-713.  Moreover, the outside auditors' input, advice, certifications, and subsequent actions negated scienter on the held-for-sale claim, and the instruction regarding outside auditors would have enabled defendants to so argue to the jury. *See* D-713, D-987; *see also* pp. 19-20, below.

## V.    BBX and Levan Are Entitled to a New Trial Based on Prejudicial Comments by the SEC During Closing Argument.

The SEC also repeatedly, misleadingly, and prejudicially argued in closing that a securities fraud claim could be predicated on the testimony of three individuals seeking to bid on loans as part of the JMP process based on a belief that BBX was selling loans.

The SEC's Amended Complaint on the held-for-sale issue alleged that defendants misled current or potential BBX shareholders by materially misstating the value of certain loans in BBX's 2007 Form 10-K, almost all of which were the subject of the JMP engagement.  DE 34, ¶ 10.

At the charge conference, defense counsel objected that the Section 10(b) fraud instructions should focus on "shareholders" and "potential shareholders" so that the jury does not "think it's [potential] investors in loans." Tr. 4609-11 (DE 426).  The SEC did not dispute that a jury determination that the JMP participants were misled had no bearing on its securities fraud claim, but instead said "I think that's way too subtle" and "I think potential investors captures the concept." Tr. 4610-11 (DE 426).  Based on that shared understanding of the instruction, defense counsel agreed.

During closing argument, however, the SEC's counsel repeatedly argued—contrary to the SEC's pleading, the securities laws, and the parties' shared understanding of the law—that the recipients of the JMP presentation and thus "investors" or "potential investors" were misled.  Tr. 4711, 4714 (DE 427).

Although defense counsel did not object during closing arguments, a new trial may be had "where the interest of substantial justice is at stake" even in the absence of a contemporaneous

objection. *McWhorter v. City of Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990).  Here the jury well could have concluded that, even though the loans subject to the JMP engagement should not have been written down by a penny, defendants were liable for the presentation that JMP sent out to participants.  That outcome is so divorced from the pleadings and law and so prejudicial that a new trial would be required if this Court does not enter judgment as a matter of law in favor of the defendants.

## VI.  BBX and Levan Are Entitled to a New Trial Based on Various Evidentiary Errors.

### A.  The Court Improperly Admitted Water-Cooler Gossip Into Evidence.

Multiple emails described on their face as "rants" by two former BBX employees were improperly admitted into evidence, *see, e.g.*, P-89, P-98, P-108, P-122, P-304, P-306, P-308, P-338, despite the fact that neither BBX's executive management nor Alan Levan ever saw them until they were uncovered during litigation. Tr. 3389 (Abdo; DE 416); Tr. 3852-83 (Levan; DE 420).  All of those emails were the subject of defendants' pre-trial motions *in limine*, DE 266, which are incorporated by reference and spell out how they were inadmissible hearsay and also inadmissible under Federal Rules of Evidence 401-03.  The SEC focused heavily on those emails in opening, called one of the authors of those emails as its lead witness, and relied extensively on the emails in closing argument.  Tr. 259, 265-66 (DE 352); Tr. 4693-97, 4707-08 (DE 427).

And those were certainly not Alan Levan's admissions.  Prior to discovery in connection with the litigation, he never saw the emails and at no point in time did he authorize or adopt any of them.  The emails should not have been introduced as evidence against him, as they were over defense counsel's objection. Tr. 387 (Engelberg; DE 353).

### B.  The Court Erred in Excluding Certain Statements of Federal Officials, Which Were Relevant to Negate Scienter.

Defendants' disclosures were indisputably far more pessimistic than the picture that various government officials painted regarding the state of the housing market in 2007. The SEC

desperately attempted to prevent the jury from learning the full extent of the federal government's publicly expressed optimism about the housing market, and this Court refused to admit several. Ex. 3-10.  When you compare the government's rosy statements to the bleak warnings issued by BBX and Alan Levan, the SEC's scienter arguments completely fall apart.  BBX and Alan Levan were entitled to negate this element of the SEC's claim. The exclusion of the evidence was even more prejudicial in light of the erroneous falsity instruction.

### C. The Court Erroneously Excluded the PwC "Look-Back," Which Significantly Prejudiced the Defendants.

After this lawsuit was filed in 2012, BBX's outside auditor, PricewaterhouseCoopers (PwC), conducted an independent review of the allegations in the SEC's complaint to determine (1) whether anyone in BBX's management made material misrepresentations to PwC in 2007 and 2008, and (2) whether certain loans should have been classified as held-for-sale as of December 31, 2007.  Ex. 11.  PwC concluded in its "Look-Back" that BBX's 2007 accounting treatment was appropriate and that Alan Levan and BBX had not engaged in any deceptive activity. Defendants' argued that the PwC Look-Back was admissible prior to trial, DE 267, DE 268 at 5-9, and those papers are incorporated by reference.

Even though the prior judge noted that "the Look Back concludes that the SEC's accounting-fraud theory claims are meritless," DE 292 at 1, he erroneously excluded the document and this Court adhered to that ruling, Tr. 942 (Toalson; DE 358).  This Court so ruled even though the SEC independently opened the door to the Look-Back by asking misleading questions to Toalson suggesting that PwC had never received a copy of the JMP engagement letter, Tr. 923 (Toalson; DE 358), when in fact PwC had evaluated the letter in the context of the Look-Back.

The Look-Back would have provided critical evidence refuting the SEC's held-for-sale claim.  The Look-Back shows that, although the SEC successfully argued PwC was misled, PwC

did not believe it had been misled.  Cases within the Eleventh Circuit recognize that when an auditor chooses to stand by its audit opinion, such a stance weighs against a finding of scienter under an accounting fraud theory.[11]  And when reasonable accountants can differ regarding the appropriate valuation under GAAP, scienter is lacking.[12]  The PwC Look-Back would have demonstrated a difference of opinion between PwC and the SEC's expert, which independently defeats the SEC's claim of fraud.  The Look-Back's ultimate conclusion that the accounting treatment was proper also independently defeats the SEC's claim.  It was prejudicial error to exclude such highly probative evidence.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request 3 hours of total oral argument on this Motion and the accompanying Rule 50 motion.  Both motions address findings of liability where the SEC has indicated it seeks to bar Alan Levan from future service as an officer and director of publicly traded companies, both motions therefore implicate the interests of three publicly-traded companies, both motions address findings of fraud, both motions involve voluminous disclosures, and both motions involve an investigation that the SEC began informally in 2007.  Defendants are entitled to have their motions fully heard, especially given the interim reputational and financial consequences of any potential penalties not stayed pending appeal.

---

[11] *In re Jiangbo Pharm., Inc. Sec. Litig.*, 884 F. Supp. 2d 1243, 1262-63 (S.D. Fla. 2012); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004); *City of Pontiac Gen. Employees Retirement Sys. v. Schweitzer-Mauduit Int'l*, 806 F. Supp. 2d 1267, 1296 (N.D. Ga. 2011).

[12] *Meyer v. St. Joe Co.*, 2012 WL 94584, at *10 (N.D. Fla. Jan. 12, 2012), *aff'd*, 710 F.3d 1189 (11th Cir. 2013); *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1260 (M.D. Fla. 2002).

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

By:  /s Eugene Stearns
      EUGENE E. STEARNS
      Florida Bar No. 149335
      estearns@stearnsweaver.com
      GORDON M. MEAD, JR.
      Florida Bar No. 49896
      gmead@stearnsweaver.com
      JENEA M. REED
      Florida Bar No. 84599
      jreed@stearnsweaver.com
      CECILIA D. SIMMONS
      Florida Bar No. 469726
      csimmons@stearnsweaver.com
      MATTHEW C. DATES
      Florida Bar No. 90994
      mdates@stearnsweaver.com

      *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of January, 2015, I filed the foregoing document with the Clerk of the Court using CM/ECF or via email to the Judge's chambers. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via CM/ECF or via email.

/s Eugene Stearns
EUGENE E. STEARNS

## <u>SERVICE LIST</u>

*Securities and Exchange Commission v. BankAtlantic Bancorp, Inc. and Alan B. Levan*
Case No. 0:12-cv-60082-DPG
United States District Court, Southern District of Florida

James M. Carlson
carlsonja@sec.gov
Russell Koonin
kooninr@sec.gov
Andrew O. Schiff
schiffa@sec.gov
Brian P. Knight
knightb@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
801 Brickell Avenue
Suite 1800
Miami, FL 33131
Telephone: (305) 982-6300

*Attorneys for Plaintiff*